**EMPIREGAS, INC., OF NOEL,**
Plaintiff-Appellant,

v.

**HOOVER BALL & BEARING COMPANY**
et al., Defendants-Respondents.

No. 57494.

Supreme Court of Missouri,
Division No. 1.

April 8, 1974.

**658**

———◆———

Neale, Newman, Bradshow & Freeman, O. J. Taylor, Joseph A. Bohrer, Springfield, for plaintiff-appellant.

Blackwell, Sanders, Matheny, Weary & Lombardi, Stephen T. Adams, Larry L. McMullen, Kansas City, Missouri for defendant-respondent, Hoover Ball & Bearing Co.

John M. Kilroy, Donald L. Shughart, John R. Caslavka, Kansas City, for defendants-respondents, American Potash & Chemical Corp. and Kerr-McGee Chemical Corp.; Shughart, Thomson & Kilroy, Kansas City, of counsel.

George M. Flanigan, McReynolds, Flanigan & Flanigan, Carthage, for defendant-respondent, Thiokol Chemical Corp.

SEILER, Judge.

This appeal involves the question of whether the petition for damages which is before us, states a claim upon which relief can be granted. The trial court held that the original petition and subsequently a first amended petition did not, and from the court's order of dismissal, the plaintiff has appealed. Jurisdiction is here because of the monetary amount involved, that being sufficient to confer jurisdiction at the time this appeal was taken, so that we retain and decide the case in accordance with the provisions in the schedule to the 1970 amendment to Art. V of the 1945 constitution. We reverse and remand.

The claim grows out of the explosion of a freight train. The petition alleges the corporate existence of plaintiff and that of four foreign corporations. The petition names eight individuals as defendants, who are alleged to have been "at all times hereinafter mentioned, employees, agents and servants of the Kansas City Southern Railway Company."[1]

The petition then alleges that on August 3, 1969, at or near Noel, Missouri, the aforesaid defendants "had exclusive control or right of control over the locomotives, trains (including the consist or cars and equipment thereon and therein) track, roadbed, switches, and all other equipment of the Kansas City Southern Railway Company in its yards at Noel, Missouri, and the track and right-of-way to the north and south thereof, the installation and operation of safety devices, communications equipment and maintaining lookouts, and making and enforcing operating and safety rules, and also had exclusive control or the right of control over the management, transportation, dispatching and supervision of said train operations, including inspections of and accepting or rejecting interchange shipments of cars and cargo, and including the packing, inspecting, accepting or rejecting and trans-

---

1. Ultimately the trial court sustained a motion for summary judgment in favor of these eight individual defendants and they are no longer in the case.

porting of volatile explosives, dangerous and combustible materials, and of the make-up and consist of said train . . ."

It is further alleged ". . . [t]hat plaintiff did not have any control or right of control over any of the above-named items, functions, operations, equipment or supplies . . ."

It is next alleged "[t]hat in the Town of Noel, Missouri, on said date, there was a series of sudden and violent explosions of one of the Kansas City Southern Railway Company's freight trains and the parts and components thereof, which occurred while said train was being moved maneuvered and operated under and by defendants active, sole control . . ."

It is next alleged that ". . . said explosions occurred without warning to plaintiff and were unusual, extraordinary, unnecessary and unanticipated by the plaintiff, and its occurrence would not, in the performance of the above functions on the part of defendants, be expected or would happen without the negligence of defendants . . . and the defendants possess knowledge and means of information as to the cause of said explosions superior to that of plaintiff."

The petition goes on to state that the explosions and resulting damages to plaintiff were a direct result of the negligence of defendants.

The petition concludes by alleging damage to plaintiff's nearby buildings, offices, motor vehicles, storage tanks, etc. to the extent of $100,000 and loss of income and profits of $50,000.

The first amended petition was the same as the original, except for an allegation that the four defendant foreign corporations were subject to the jurisdiction of the court under Secs. 351.633 and 506.500, RSMo 1969, V.A.M.S., for the reason that said defendants committed a tort in the state of Missouri as set forth in the petition and an allegation that approximately fifty percent of the damage occurred on premises not owned by or leased from Kansas City Southern Railway Company.[2]

The corporate defendants filed separate but substantially similar motions, contending the petitions failed to state a claim upon which relief could be granted, as well as attacking the court's jurisdiction, venue, process, and service of process. In general, the corporate defendants maintained they were not authorized to and did not do business in Missouri and had no contacts with this state, had no control or right of control over the train, tracks, equipment, etc., and had nothing to do with the routing or arrangements of the cars or cargo. The affidavit of the vice president of defendant Kerr-McGee Chemical Corporation stated his company had a chemical plant in Nevada at which point it sold ammonium perchlorate to defendant Thiokol Chemical Corporation; that the chemical was loaded by Thiokol in bins on railroad cars furnished either by the United States government or by Thiokol, and shipped under bills of lading from a government ammunition plant in Texas under special permits of the Department of Transportation; that Kerr-McGee had no control over the bins, or the railroad, the routing of the train, or selection of the states through which the train would pass. Defendant Hoover Ball & Bearing Company stated that it manufactured containers being used on the train to transport materials, but averred that the containers had earlier been sold by them to defendant Thiokol and that defendant Hoover Ball & Bearing Company had no control over the containers or the train.

---

2. This latter allegation apparently was in anticipation of our decision in Tri-State Gas Co. v. Kansas City Southern Railway Co., 484 S.W.2d 252 (Mo.1972), where we held the railroad was released from liability for damage to plaintiff's property (Tri-State Gas Co. was the former name of plaintiff) by reason of certain provisions in the lease between plaintiff and the railroad. The briefs in the Tri-State case had been filed in this court by the time the first amended petition was filed in the present case.

Defendants continue to assert that none of them could possibly have had any control over the operation of the railroad; that railroads are run by railroad companies and their employees and not by shippers or manufacturers; that their motions and affidavits show the defendant corporations were not doing business in Missouri, did not commit any tort here, had no control or right of control over the train or any portion thereof, have no superior knowledge as to the cause of the explosion, and that the corporation which did have control over the train, namely, the railroad company itself, it not even a defendant in the case.

After hearing argument and taking the motions under advisement, the trial court entered an order quashing service as to the corporate defendants and granting plaintiff leave to file an amended petition. The amended petition was filed, the motions were filed anew, and thereafter the court sustained the motions of the corporate defendants and ordered the first amended petition dismissed.

■■ Defendants claim that all the trial court did was to quash service, which is a nonappealable order, Frank v. Sinclair Refining Co., 363 Mo. 1054, 256 S.W.2d 793 (1953), and that the appeal is therefore premature. It is true the court's order from which this appeal was taken does quash service, but it goes on to dismiss the petition, which, in our judgment, necessarily shows the court was ruling that the petition did not state a claim upon which relief could be granted, an order which is appealable, Frank v. Sinclair Refining Co., supra. Quashing service under the circumstances before the trial court was another way of

saying that the petition did not state a claim upon which relief could be granted; this for the reason that for Sec. 351.633, supra, to be invoked, there must be a tort committed in Missouri in whole or in part by a foreign corporation against a resident or nonresident. To determine whether the service provisions of Sec. 351.633 can be used the petition must be examined. If it does not show on its face that the defendant has committed a tort in Missouri out of which the cause of action being asserted arises, attempted service under the statute would be subject to a motion to quash. If it does state a claim, then the procedure being used by plaintiff against these corporate defendants is valid and not subject to being quashed.[3]

■■ At the time this case was before the trial court, the then rule 55.31, V.A.M.R., permitted "speaking motions" as to certain named grounds such as lack of jurisdiction, improper venue, insufficiency of process and the like, which grounds could be supplied by affidavit. This is what the corporate defendants attempted with their verified motions and affidavits. However, a motion to dismiss for failure to state a claim upon which relief could be granted was covered by a different rule, rule 55.33, and it made no provision for a "speaking motion" or for affidavits in support of such motions. A motion under rule 55.33 is directed toward testing the sufficiency of the pleading as it appears on its face, without more. The allegations of fact in the verified motions and in the attached affidavits could not, therefore, be considered in ruling on the legal question of whether the petitions on their face were sufficient to state a claim upon which relief could be granted.[4]

---

3. Secs. 351.633 and 506.500, RSMo 1969, V.A.M.S., were held constitutional in State ex rel. Deere v. Pinnell, 454 S.W.2d 889 (Mo. banc 1970).

4. In the meantime, rules 55.31 and 55.33 have been combined into a new rule, 55.27, adopted January 19, 1973, effective September 1, 1973. The new rule provides that even with respect to a motion for dismissal for failure to state a

claim upon which relief can be granted, matters outside the pleadings can be presented to the court and if not excluded the motion will then be treated as a motion for summary judgment, subject to the summary judgment procedure set forth in rule 74.04. This means, of course, that both affidavits and counter affidavits can be used so that an affidavit need not go unchallenged if the op-

■ We do not agree with the trial court that the first amended petition does not state a claim upon which relief can be granted. In judging the sufficiency of a petition in this regard, we are not concerned with what the evidence may prove in the case. Taking the allegations of the petition to be true, the sole question is, does the petition state a claim upon which relief can be granted.

■ Plaintiff's petition is premised on the res ipsa loquitur doctrine. In general, the doctrine of res ipsa loquitur has no application to the pleadings, but is an inference aiding the proof, Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306 (1952); 65A C.J.S. Negligence § 220.23, p. 606. However, general allegations of negligence certainly do not preclude reliance upon res ipsa loquitur, Jarboe v. Kansas City Public Service Co., 359 Mo. 8, 220 S. W.2d 27, 31 (1949). Negligence is an ultimate fact which may be pleaded as such and the law does not require the impossible, Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87 (1949).

■ We conclude the petition does state a claim. The petition contains general allegations of negligence on the part of defendants as a result of which plaintiff's property was damaged. It alleges that defendants had exclusive control or right of control over the exploding train, its make-up, the cargo, tracks, and all equipment, while plaintiff had no control or right of control over any of the above.

There are multiple defendants here, but the allegations of the petition place the instrumentality in question—the train—under the joint control of all defendants. We take this to mean that defendants had or exercised joint control, not that they had control of the train in the aggregate. McGowen v. Tri-County Gas Company, 483 S.W.2d 1 (Mo.1972) and Willis v. Termi-

nal Railroad Association of St. Louis, 421 S.W.2d 220 (Mo.1967).

The petition asserts further that there was a series of sudden and violent explosions of the freight train, that the explosions occurred without warning, and that they were unusual and unnecessary and would not be expected or happen in the operation of the train without negligence of defendants. The allegations of the petition thus put the occurrence in that class of occurrences which does not ordinarily happen if those in charge use due care. This is true of the explosion of a train passing through a town.

State ex rel. Birdsboro Corporation v. Kimberlin, 461 S.W.2d 292 (Mo.App.1970) is a case which involved a claim against a foreign corporation on the ground that it committed a tort in Missouri and where the petition made only general allegations of negligence but was held to be sufficient. For other cases supporting the sufficiency of the petition before us, see McGowen v. Tri-County Gas Company, supra; Plato Reorg. Sch. D. No. R–5 v. Intercounty Electric Coop. Ass'n, 425 S. W.2d 914 (Mo.1968); Gateway Chemical Company v. Groves, 338 S.W.2d 83 (Mo. 1960); Williams v. Terminal Railroad Association, 306 S.W.2d 577 (Mo.1957); Welch v. Thompson, 357 Mo. 703, 210 S. W.2d 79 (1948) and Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S.W.2d 654 (1933).

■ Having concluded the first amended petition states a cause of action, it follows the same is true of the original petition, which as noted, is identical with the first amended petition with certain immaterial exceptions. We, therefore, reject defendants' argument that inasmuch as the court quashed service of summons on the original petition, it was necessary that plaintiff have new process issued and served rather than filing its first amended

posing party is in a position to oppose it, but, as stated, this procedure was not available with respect to a motion to dismiss for fail-

ure to state a claim upon which relief could be granted when the present case was before the trial court.

petition and serving copies on counsel of record by mail. We have examined the summonses and returns thereon of the original petition as they appear in the record and find them to be regular in all respects. It is apparent that the court in quashing service of process on the original petition was in reality ruling that it failed to state a claim upon which relief could be granted. The opposite, however, was the case. The original service was therefore sufficient and subsequent pleadings could be served by mail under rule 43.01.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent herewith. By this time, as pointed out above, the "speaking motion" technique is permitted with respect to a motion to dismiss for failure to state a claim upon which relief can be granted and the parties can take such steps in this regard as they may be advised to do in light of our present rule 55.27.

All of the Judges concur.