[Civ. No. 16266.   Second Dist., Div. One.   Sept. 2, 1948.]

HAROLD HOFFING, Respondent, v. COCA-COLA
BOTTLING COMPANY, Appellant.

Schell & Delamer for Appellant.

Abe Richman, Samuel A. Rosenthal and Leonard G. Ratner for Respondent.

DORAN, J.—The defendant herein has appealed from a judgment of $5,000 rendered in favor of the plaintiff following a trial before a jury. The judgment was for damages claimed to have resulted from the explosion of a bottle of Coca-Cola, injuring plaintiff's right hand. The beverage in question was manufactured, bottled and distributed by the appellant corporation. The bottles which contained the beverage, however, were manufactured and supplied by the Owens-Illinois Pacific Coast Glass Company. Both new and used bottles were made use of by the appellant company.

There is evidence in the record to the effect that plaintiff's father, F. L. Hoffing operated a confectionery store, first located at 7569 Sunset Boulevard, and moved just previous to the accident to 7615 Sunset Boulevard. For some months prior to March 30, 1944, plaintiff's father had been receiving a quota of three cases of Coca-Cola per week at the old store, but there is a conflict of evidence as to the time and place of delivery of the bottles here in question. It is plaintiff's contention that the bottles were delivered to the new store on March 30, 1944, whereas the defendant claims that they were delivered at the old store and moved to the new store by plaintiff's father. Plaintiff worked in the store part time.

The new store opened for business on April 1, 1944; about 10 a. m. plaintiff arrived there to take charge and the father left. About one-half hour later plaintiff's first customer arrived and requested three bottles of Coca-Cola. Plaintiff went into a small beverage room at the rear of the store where three cases of the beverage were stacked, and removed three bottles from the top case which stood about 3½ feet off the floor. Plaintiff testified that each bottle was lifted out separately, grasping it by the neck; that the bottles were carefully carried, two in the right hand and one in the left, into the store, held close to plaintiff's stomach, with the tops of the bottles upward; that the bottles were not bumped against anything. The plaintiff further stated: "I was about to hand them to Mr. Todd (the customer). I heard a pop and I felt a jar, felt my hand jarred, and immediately dropped the bottles and grasped my right hand with my thumb to stop the squirt of blood." As stated in respondent's brief, "Plaintiff's right

hand was badly cut, both an artery and a nerve being severed, and it was necessary for him to undergo extensive treatment. As a result plaintiff suffered a loss of motion and numbness in his right hand which interfered with his musical career,'' (saxophone and clarinet playing).

Mr. Todd, the customer being served, and another customer, saw and heard the explosion, but disagreed as to whether one or two pops were heard. There was also testimony that during the short period of time between delivery of the beverage and the accident, the cases of Coca-Cola were not moved. Plaintiff's testimony that in carrying the three bottles into the store plaintiff did not bump the bottles against anything, is corroborated by the two customers who were in the store.

Expert witnesses testified concerning the manufacture of glass bottles and explained several standard methods for testing glass such as visual examination, hammer test, polariscope test, thermal test and pressure test. There was evidence that such tests are generally employed by bottle manufacturers, and while not infallible, reveal various defects present at that time. Plaintiff's expert, Dr. Benson, expressed an opinion that the explosion was probably caused by a defect in the bottle, perhaps accompanied by excessive pressure inside the bottle; that a mechanical or thermal strain or defect could arise either during the process of bottle manufacture or could be later acquired through handling, scratching, clipping, bumping, bruising, and general use. Two expert witnesses called by the defendant stated that no opinion could be expressed as to the cause of the explosion from the facts given. One of such experts, however, stated an opinion that the explosion was caused by outward force originating from inside the bottle; further, that fatigue from use would be a cause for explosion, and that the thermal shock test would probably reveal weakness in the bottle due to fatigue.

The record discloses that in the defendant's bottling plant there was some visual inspection of bottles at the rate of about 165 bottles per minute if there was but one inspector, or half that number if there were two inspectors. No other method of inspection was employed. Defendant's superintendent also testified that the pressure in the bottles after capping is about 47 pounds per square inch at 70 degrees Fahrenheit; that sometimes the filled bottles explode after delivery to the trade, or in the process of being filled. The defendant company also offered evidence to show that Coca-

Cola bottles are the thickest and strongest commercial bottles used in the industry; that the bottles used averaged 30 to 40 trips; that the number of inspections made at defendant's plant equals those employed at other similar plants.

The chief contention expressed in appellant's briefs is that the doctrine of res ipsa loquitur is not applicable to the present case; that the trial court therefore erred in instructing the jury at all with reference to this doctrine; and that the instructions thereon were incorrect and prejudicial. It is also argued that there was no evidence of negligence on the part of the defendant and no proof that any negligence of the defendant proximately contributed to the plaintiff's injury. More specifically, appellant's claim is that "the evidence fails to show that the bottle was defective when it left the hands of the defendant"; that even if plaintiff "had shown a defect to have existed when the bottle left the possession of the defendant . . ., nevertheless he still has failed to show that such defect . . . was either caused by the defendant bottler or could have been discovered by that bottler by the use of reasonably practical tests."

The case of *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436], has been cited by both parties to this appeal, and the factual situation therein was not dissimilar from the present controversy. In the Escola case, "Plaintiff, a waitress in a restaurant, was injured when a bottle of Coca Cola broke in her hand. . . . Defendant's driver delivered several cases of Coca Cola to the restaurant, placing them on the floor, one on top of the other, under and behind the counter, where they remained at least thirty-six hours. Immediately before the accident, plaintiff picked up the top case and set it upon a nearby ice cream cabinet . . . . She then proceeded to take the bottles from the case with her right hand, one at a time, and put them into the refrigerator. Plaintiff testified that after she had . . . moved the fourth bottle about eighteen inches from the case 'it exploded in my hand. . . . It made a loud pop'. . . . The broken bottle was not produced at the trial, the pieces having been thrown away . . . shortly after the accident." The plaintiff was unable to show any specific acts of negligence and relied, as in the instant case, upon the doctrine of res ipsa loquitur. There, as here, the Coca-Cola Bottling Company contended that this doctrine did not apply and that the evidence was insufficient to support the judgment. In the Escola case, judgment for plaintiff was affirmed.

■ After reiterating the well-established rule that ''res ipsa loquitur does not apply unless (1) defendant has exclusive control of the thing causing the injury and (2) the accident is of such a nature that it ordinarily would not occur in the absence of negligence by the defendant,'' the Escola opinion contains the following statement particularly applicable to the present case: ''Under the more logical view, however, the doctrine may be applied upon the theory that defendant had control at the time of the alleged negligent act, although not at the time of the accident, *provided* plaintiff first proves that the condition of the instrumentality had not been changed after it left the defendant's possession.'' As to this latter matter, the burden of proof is, of course, on the plaintiff. ■ However, as said in the Escola case at page 458, ''It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. If such evidence is presented . . . the issue should be submitted to the jury under proper instructions.''

Appellant's argument that the res ipsa loquitur doctrine does not apply in the instant case, and that it was incumbent on plaintiff to show affirmatively that there was some negligence on the part of the appellant bottling company is untenable. As respondent's brief avers: ''If defendant were correct in its contention . . . there would be no purpose or meaning in the doctrine, because plaintiff would be required to establish the very facts to be inferred before he would gain the benefit of the inference.'' In other words, approval of appellant's proposition would amount to an abrogation of the doctrine of res ipsa loquitur in its entirety. The doctrine is too well established to admit of question at this time.

■ The evidence in the present case, as respondent has mentioned, ''must be viewed most favorably to plaintiff (respondent) on appeal.'' The record herein discloses amply sufficient evidence to support the verdict. There is, for example, substantial evidence that the condition of the bottle did not change after it left the defendant's possession; there is likewise evidence that, at the time in question, plaintiff handled the bottles carefully and did not bump them against anything. That the appellant bottling company had exclusive control over both the charging and inspection of the bottles which

were delivered to respondent's store, cannot be doubted. It will also be remembered that there was evidence concerning several standard methods which were available for testing glass bottles; that both new and used bottles were used, and that the only test made use of by appellant was a cursory, visible inspection which the jury may well have deemed insufficient.

As was said in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 461 [150 P.2d 436], if "defects do occur in used bottles there is a duty upon the bottler to make appropriate tests before they are refilled, and if such tests are not commercially practicable the bottles should not be re-used. This would seem to be particularly true where a charged liquid is placed in the bottle." There, as here, the defendant presented evidence of the use of certain precautions during the bottling process, in regard to which the court said: "It is well settled, however, that when a defendant produces evidence to rebut the inference of negligence which arises upon application of the doctrine of res ipsa loquitur, it is ordinarily a question of fact for the jury to determine whether the inference has been dispelled." Such a question was presented in the instant case.

Appellant's briefs make the further contention that even if the res ipsa loquitur doctrine does apply, the trial court's instructions thereon were erroneous, confusing and prejudicial. Certain isolated portions of the charge have been quoted in support of this argument. However, under the usual rule, the instructions must be considered, not piecemeal, but as an entirety, and when so reviewed, no prejudicial error is here apparent.

The judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied September 20, 1948, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1948. Edmonds, J., voted for a hearing.